In re ST. LOUIS–SAN FRANCISCO
RY. CO.

No. 7004.

District Court, E. D. Missouri, E. D.

March 16, 1945.

As Amended March 27, 1945.

418

Charles P. Williams, of St. Louis, Mo., Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City, and Edwin S. S. Sunderland, Thomas O'G. FitzGibbon, and Judson C. McLester, Jr., all of New York City, for Fort Scott Bondholders' Committee.

Lowenhaupt, Waite, Chasnoff & Stolar, of St. Louis, Mo., and Hunton, Williams, Anderson, Gay & Moore, Henry W. Anderson, and George D. Gibson, all of Richmond, Va., for Prior Lien Bondholders' Committee.

Carter, Bull & Garstang, of St. Louis, Mo., and Cravath, Swaine & Moore, Robert T. Swaine, and Leonard D. Adkins, all of New York City, for Consolidated Bondholders' Committee.

Bryan, Cave, McPheeters & McRoberts, of St. Louis, Mo., and White & Case and Fitzhugh McGrew, all of New York City, for Bankers Trust Co., trustee.

Fordyce, White, Mayne, Williams & Hartman, of St. Louis, Mo., and Rathbone, Perry, Kelley & Drye and Alexander M. Lewis, all of New York City, for Central Hanover Bank & Trust Co., trustee.

Nagel, Kirby, Orrick & Shepley, Allen C. Orrick, and Wm. G. Pettus, Jr., all of St. Louis Mo., and Milbank, Tweed & Hope and Orville W. Wood, all of New York City, for Chase Nat. Bank of City of New York and John A. Aid, trustees.

Phil W. Davis, Jr., of Tulsa, Okl., for Lola Brooks, administratrix of the estate of F. S. Brooks, deceased.

W. N. Maben and Phil W. Davis, Jr., both of Tulsa, Okl., for John E. Dikis, administrator of the estates of Leonard C. Lee, deceased, Homer C. Lee, deceased, and Robert E. Lee, deceased.

William V. Hodges, of Denver, Colo., for debtor St. Louis-San Francisco Ry. Co.

MOORE, District Judge.

A plan of reorganization for the St. Louis-San Francisco Railway Company has been before this court before and was disapproved and returned to the Interstate Commerce Commission for further consideration. In re St. Louis-San Francisco R. Co., D.C., 46 F.Supp. 120. The Interstate Commerce Commission has now forwarded a new plan embodied in its "Report of the Commission on Further Consideration", under date of July 4th, 1944, and "Second Supplemental Report", under date of October 2nd, 1944, which reports were filed on July 15th and October 7th, 1944, respectively.

The full details of the present Commission plan are of record and will not be here repeated. It is sufficient to say that this new plan does not radically differ from the original plan ruled on by this court in 1942, although it has various altered aspects most of which will subsequently appear in the course of this opinion.

Since and after this court's prior opinion and order of disapproval in July of 1942, an appeal was taken by the Reconstruction Finance Corporation and the Railroad Credit Corporation, but pending the preparation of said appeal, due to the increased earnings from operations, it became possible to pay off the Birmingham bonds and to settle the claims of the Reconstruction Finance Corporation and the Railroad Credit Corporation. Such acts were deemed desirable in the interest of the public and the bondholders, since it eliminated delay in reorganization, and the settlement was negotiated, approved by this court, and the case remanded to the Commission for further hearings, in accordance with this court's opinion.

In the meantime, the three bondholder committees had negotiated amongst themselves a new plan which they found mutually satisfactory and responsive to changes in conditions since the Commission's 1940 decision, and, the co-operation of the three indenture trustees having been obtained, this negotiated bondholders' plan was proposed to the Commission at a hearing in February of 1944. In its report now here for consideration, the Commission has approved a plan which, although not identical with the above-mentioned negotiated bondholders' plan, was also acceptable to said bondholders and is substantially the

same. Subsequently, in its "Second Supplemental Report", the Commission, on October 2nd, 1944, overruled in entirety objections that the debtor had filed to its plan, and the plan, together with a transcript of the proceedings, was thereupon certified here according to law. On October 11th, 1944, the court entered its order requiring all objections and claims for equitable treatment to be filed by November 6th, 1944, and notice having been given, objections were filed only by the debtor corporation and by Lola Brooks, administratrix of the estate of F. S. Brooks, deceased, and John E. Dikis, administrator of the estates of the decedents Leonard C. Lee, Homer C. Lee and Robert E. Lee. On the other hand, the present plan is supported by the joint action of the following interested parties:

(1) The Fort Scott Committee, which consists of persons either representing, or officers of corporations owning, substantial amounts of Fort Scott bonds and which held deposits and assents in the aggregate principal amount of $9,496,000 on November 1, 1944;

(2) The Prior Lien Committee, consisting of persons who are or were officers of corporations owning substantial amounts of Prior Lien bonds and which, on November 1, 1944, held deposits and assents in the aggregate principal amount of $41,-054,750;

(3) The Consolidated Committee, which consists of persons either representing, or officers of corporations owning or representing, substantial amounts of Consolidated bonds and which held deposits and assents on November 1, 1944, in the aggregate principal amount of $35,620,500;

(4) Bankers Trust Company, successor corporate trustee under the refunding mortgage of the Kansas City, Ft. Scott & Memphis Railway Company, dated August 23, 1941, securing the Ft. Scott bonds;

(5) Central Hanover Bank and Trust Company, corporate trustee under the prior lien mortgage dated July 1, 1916, securing the Prior Lien bonds; and

(6) The Chase National Bank of New York City and John A. Aid, trustees under the consolidated mortgage dated March 1, 1928, securing the Consolidated Bonds.

All of these six interests have filed a joint brief and they represent all issues of bonds now outstanding. There are no other classes of secured creditors and the claims of unsecured creditors and stock-holders have been held by the Commission to be without value. Therefore, all creditors whom the plan recognizes now supported it and, after the long pendency of a reorganization which began in 1933 this court at long last is presented with a plan which is unopposed save by those whose equity has been extinguished.

A District Court in considering a plan of corporate reorganization has a primary duty under the law, aside from any questions of objections and claims for equitable treatment, to independently satisfy itself of certain fundamentals concerning that plan. It must, in the words of the Act, determine whether—

"(1) It complies with the provisions of subsection (b) of this section, is fair and equitable, affords due recognition to the rights of each class of creditors and stockholders, does not discriminate unfairly in favor of any class of creditors or stockholders, and will conform to the requirements of the law of the land regarding the participation of the various classes of creditors and stockholders;

"(2) the approximate amounts to be paid by the debtor, or by any corporation or corporations acquiring the debtor's assets, for expenses and fees incident to the reorganization, have been fully disclosed so far as they can be ascertained at the date of such hearing, are reasonable, are within such maximum limits as are fixed by the Commission, and are within such maximum limits to be subject to the approval of the judge;

"(3) The plan provides for the payment of all costs of administration and all other allowances made or to be made by the judge * * *." Title 11 U.S.C.A. § 205, sub. e.

Since in this proceeding these features for the most part are not disputed by any persons, the court will first address itself as briefly as possible to the discharge of this duty.

In determining these questions the court is naturally influenced in favor of the fair and equitable nature of this plan amongst those recognized by it, by the fact that all of those creditors' representatives now support it, and by the further fact that generally this plan has not been, except in certain respects previously disapproved by this court, substantially changed from the plan previously presented to this court and, in 1942, generally approved. The court feels, however, that to comply with the terms of the Act, it must briefly set forth

the salient features of the plan and state its opinion thereon.

The new capitalization and charges now presented by the Commission, in comparison to those previously considered in the opinion of 1942, are shown by the following tables set out in the Commission's Report:

The Birmingham Bonds and priorities to the Reconstruction Finance Corporation and the Railroad Credit Corporation have been eliminated by the trustees' purchase of the total claims of those corporations, and the plan, in accordance with the order of this court, provides for subrogation of those entitled to the income from which

## Capitalization

|  | Plan Considered in Opinion of 1942 | Plan Now Before the Court |
|---|---|---|
| Fixed-interest debt | $ 75,685,319 | $ 76,371,342 |
| Contingent-interest debt | 40,385,885 | 47,549,826 |
| Preferred stock | 61,846,169 | 61,859,782 |
| Common stock | 62,082,631 | 62,057,858 |
| Totals | 240,000,004 | 247,838,808 |

## Annual Charges

|  | Plan Considered in Opinion of 1942 | Plan Now Before the Court |
|---|---|---|
| Fixed Charges |  |  |
| Interest | 3,000,117 | 3,001,773 |
| Sinking Funds | 32,531 | None |
| Contingent Charges |  |  |
| Interest | 1,817,365 | 2,139,742 . |
| Sinking funds, continuously operative | 401,929 | 421,212 |
| Excess bond sinking fund | variable* | None |
| Capital bond | 1,125,000 | variable** |
| Preferred stock dividend | 3,092,309 | 3,092,989 |

*Operative under prescribed conditions only; payment 50 percent of available net income after prior charges.

**Balance of $500,000 required in fund before payment of dividends on common stock.

Under the present plan, holders of outstanding bonds of the several classes will receive respectively for each $1,000 principal amount new securities approximately in the amount specified in the following table, derived from the same source:

these claims were paid. Attached to the Commission's report, as Appendix "A" is a table showing the present capital structure of the debtor corporation and the distribution of new securities under the plan now before this court. A copy of the same

|  | First mortgage 4's | Income 4½'s | Preferred stock | Common stock of no par value stated at $50 a share | Cash Allocations. |
|---|---|---|---|---|---|
| Fort Scott | $733 | $267 | $— | $ — | $61.34 |
| Prior lien, Series A | 219 | 171 | 332 | 333.50 | 15.36 |
| Prior lien, Series B | 233 | 182 | 353 | 355.00 | 25.39 |
| Consols., Series A | 221 | 158 | 174 | 174.00 | 21.05 |
| Consols., Series B | 243 | 174 | 191 | 191.50 | 36.22 |

is attached hereto in further amplifications of the provisions of said plan. See page 59 F.Supp. 425.

In addition to voluminous provisions relative to the terms of the new mortgages and stock issues and the mechanics of their execution and payment, the plan contains the following other provisions worthy of note. As to the consummation date, the plan states: "The plan shall be consummated by the issue and delivery of the new securities provided for in the plan as soon as practicable after confirmation of the plan and the reorganization managers shall publish, as directed by the court, notice of the date as of which the new securities are to be or shall have become available for delivery. The court on application of the reorganization managers shall, in the light of the date or dates as of which the delivery of the properties to the reorganized company, the execution of the new mortgages and the issue and the delivery of the new securities have been, or are expected to be, accomplished, by order determine a convenient and appropriate date for giving effect to the plan (such date being herein called the consummation date.)"

It further provides that the new reorganized company shall be incorporated under the laws of such State as the reorganization managers, with the approval of the court, shall determine, and that all property of the debtor, or any wholly-owned subsidiary, may, in the discretion of the reorganization managers and the court, be transferred to the new corporation. The plan, further, leaves unaffected the equipment obligations of the debtor and of the bankruptcy trustees outstanding on the consummation date of the plan, and provides that the reorganized company shall pay all debts due from the debtor or the bankruptcy trustees for taxes due the United States, subject to statutes of limitations, and all expenses of reorganization, and shall assume all executory contracts of the debtor (not disaffirmed) and of the trustees.

Relative to the claim of the holders of 100 shares of the Preferred Stock of the Kansas, Ft. Scott & Memphis Railway Company, discussed in the prior opinion of this court, the plan makes the following provisions: "Since the holders of 100 shares of the preferred stock of the Kansas City, Fort Scott and Memphis Railway Company (hereinafter called the Fort Scott Company) not owned by the debtor have not procured a judgment of the court determining their rights, as required by the opinion of the court dated July 25, 1942, no provision can be made herein for such stockholders. If such stockholders shall be held to be not barred from assertion of their claims by the lapse of time and shall establish any claim against the debtor which the court shall determine to be secured by a lien or charge ahead of, or to be entitled to priority over, the prior-lien mortgage, the court may direct the reorganized company to issue to such stockholders such securities, or to pay to such stockholders such amount in cash, as, in the opinion of the court will fairly represent their relative rights in respect of such claim."

Finally, the plan provides that if ordered by the court after confirmation it may be executed by a sale or sales at not less than a fair upset price to be fixed by the court of all or any parts of the property of the debtor.

The first requirement of the statute, that the court satisfy itself that the plan complies with the provisions of subsection b, means simply that the plan must be that sort of a modification proposal contemplated by the Act, and that fixed charges are adequately covered by probable future earnings. A review of subsection b by the court reveals no aspects wherein this plan in its entirety does not embrace such a modification as there contemplated and nothing to the contrary has been brought to the court's attention.

As for fixed charges being covered by probable future earnings, although the court considers this a matter particularly within the province of the Commission, it should be noted that the amount of fixed charges provided in this plan is approximately the same as that previously approved by the court in its opinion of 1942. And no contention has been made that the Commission has in any way overburdened or over-capitalized the new company in its plan, although upon reconsideration the Commission has increased the permissible capitalization from $240,000,004 to $247,838,808. But this increase did not work to effect any substantial added burden in respect to fixed charges. The capitalization increase was granted at the suggestion of the bondholders and within this court's authorization in its prior opinion stating that further consideration might be given to the matter of possibly increasing the

total capitalization. The increase of $7,838,808 in capitalization authorized by the Commission was granted on rehearing on the basis of additional evidence of new sources of traffic that had been opened up since its prior hearing, exclusive of war installations, and the unusual amount expended for the upbuilding and maintenance of the Road during the time that it was in receivership and trusteeship, and the court believes that the advised attitude of the Commission in allowing this slight increase is well founded.

That the plan is fair and equitable in recognition of the rights of relative creditors, as found by the Commission, is, as previously stated, greatly reinforced by the acquiescence therein by the representatives of those creditors, and by the further fact that it is substantially the same plan as met in its greater detail the previous approval of this court. The court has, however, studied further the new arrangement of the plan and has again satisfied itself that it is in all respects fair and equitable to all parties embraced within its provisions. The court sees no necessity for further detailing the terms of the plan and explaining their fairness when the Commission's report so adequately demonstrates this.

As for the second requirement of the statute that the court find that the amounts claimed for expenses and fees incident to the reorganization have been fully disclosed, are reasonable, are within maximum limits fixed by the Commission and subject to the approval of the judge, the court feels that, so far as they can now be ascertained, all expenses and fees have been disclosed by the petitions for allowances filed, pursuant to order of this court of July 27th, 1944, which petitions have been referred to the Commission. It is the opinion of the court that although these applications have not yet been acted on that the court may proceed at this time with the approval of the plan without awaiting the Commission's hearing if an order be entered providing that no payment of expenses or fees incident to the reorganization covered by petitions filed shall be made except as claimed, and within limits to be later fixed by the Commission, the amount to be approved as reasonable by subsequent court order. This provision will, therefore, be embodied in the order.

The third requirement of the statute that the plan must provide for the payment of all costs of administration, and all other allowances made or to be made by the judge, is fully met by the most adequate provisions in the plan itself and requires no further comment.

In its previous opinion in this case, this court made itself very clear that it considered itself charged with the grave responsibility of seeing to it that the new company would be one such as to hold the confidence of the community, and it suggested to the Commission that in this connection the new plan should set up machinery with reference to reorganization managers, the naming of the first board of directors and, if necessary, provide for a voting trust. The court is pleased to note that this suggestion has been adopted by the Commission in its new plan and provision made for a voting trust to continue for five years from the consummation date of the plan, said trust to include two voting trustees nominated by the committees whose bondholders will receive all of the stock and most of the second mortgage bonds, to be approved by the court, and one voting trustee to be designated by the court. Further, the plan provides that the court shall have power to disapprove persons designated by the reorganization managers as directors and, in the absence of an acceptable designation, to make its own designation. Finally, it is provided that the reorganization managers shall be designated, one by each of the bondholders' committees, subject to the approval of the court, and one by the court; and that if the court should find at time of designation that any of the committees no longer holds or represents a substantial interest in the property, the court may, in its discretion, designate said managers or trustees in lieu of such committee.

The court now feels that these provisions adequately follow its admonitions and believes that with the power therein granted it the court can carry out its previously expressed determination that the reorganized company will begin its existence with a management composed of men of unquestioned standing, character, integrity and ability.

The court will now consider the objections filed to the present plan of reorganization addressing itself, first, to those filed by Lola Brooks, administratrix, and John E. Dikis, administrator. The claims of these parties are, so far as this reorganization is concerned, identical and

will be considered together, although there are technically four separate claims. They arise out of judgments rendered in favor of the administrators for personal injuries to the four intestates as a result of the negligent operation of the Frisco Railroad. In all four cases, although the accident had occurred prior to receivership, consent judgments were entered in the state courts of Oklahoma by agreement with the receivers, and claims were subsequently filed in this proceeding by the administrators, allowed and approved as unsecured claims, and included in the report of the receivers herein dated August 28, 1933. In essence, the position of these objectors is two-fold and in the alternative. First, they contend that if they are to be considered as unsecured creditors, then the plan is inequitable, unjust and does not comply with the provisions of the Bankruptcy Act, and should be disapproved and returned to the Commission. The reasons assigned in support of this contention, however, do not differ from the debtor's materially, and will stand or fall for the same reasons that will be subsequently considered.

The other string to the bow of these objectors is that these claims are entitled under the law and the facts to priority of payment over the claims of the mortgagees of the debtor. The question of this priority has, however, been referred by the court to a special master for consideration and is still pending before him, and it has no bearing or relevancy on the question of the approval or disapproval of the plan. If these creditors are subsequently held to be entitled to a priority, then the plan itself provides that their claims will be paid in cash or assumed by the reorganized company. The plan states: "Claims against the debtor entitled to priority over the respective mortgages and claims, current liabilities and obligations incurred by the bankruptcy trustees during the reorganization proceedings or by the receiver or receivers appointed by the court in the proceedings begun on November 1, 1932, to the extent unpaid at the date of consummation of the plan, shall be paid in cash or assumed by the reorganized company (subject to any applicable statutes of limitations.) All such claims, liabilities and obligations may be paid and discharged by the reorganized company or may be adjusted or compromised and dealt with in such manner as may be determined by the board of directors of the reorganized company subject to the approval of the court.

The interests of the holders of such claims, liabilities and obligations will not be adversely and materially affected by the plan."

Therefore, the objections of these parties need not work to hold up the approval of the plan at this time and will, therefore, be overruled in their attack on the plan, and held subject to subsequent decision so far as they relate to the question of priority.

Finally, the debtor on behalf of stockholders of the old company is again before this court renewing its former objections and making new objections to the plan. Some of these now before this court were made to the Commission and overruled in its supplemental report and order of October 2, 1944, and others are assigned here for the first time. The objections are lengthy and repetitious, but quite naturally attack the basic point that the plan excludes any equity in the debtor. Essentially, the debtor is merely continuing for the benefit of its stockholders the very gallant fight it has so long made for an, unfortunately, losing cause. The court, however today stands in the most fortunate position of having very clear guidance on all points in issue from the highest court in the land. In 1943, and since the prior opinion of this court in 1942, the Supreme Court of the United States, in the cases of Ecker v. Western Pacific R. Corporation, 318 U. S. 448, 63 S.Ct. 692, 87 L.Ed. 892, and Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 has conclusively given the answers to all of the objections that the debtor now makes and the debtor's present position can only be sustained if this court is to consider that those cases were wrongfully decided or that they do not hold what they so obviously appear to say.

The debtor's contention is simply and basically that the exclusion of its equity is erroneous, for the reasons that the valuation, for reorganization purposes, of its system should have been determined at a substantially higher figure than the Commission set, and that the inception date of the plan should have been set earlier so as to not recognize the whole of the accumulated bondholders' interest. The Western Pacific and The Chicago, Milwaukee & St. Paul cases, supra, are, however, determinative of both of these issues. The Supreme Court has made it clear that the

Commission's determination in regard to valuation and new capitalization is conclusive if supported by evidence and made in accordance with legal standards. The Supreme Court has also made it clear that although evidence of various elements of value is pertinent, prospective future earning capacity is the principal criterion under the Act, and that war-time earnings are not a reliable indication. Finally, the Supreme Court has stated very clearly in those cases that it is within the power of the Commission to set the effective date of the plan and that a recognition of accrued interest at its agreed rate is part of the fair and equitable nature of any plan. The language of those cases in support of the above propositions could not be clearer and this court certainly does not propose to consider their wisdom.

That the finding of no value in the stock of the debtor corporation and the findings as to permissible future capitalization are based on evidence, and made in accordance with legal standards, can hardly be doubted, and it would serve no purpose for this court to set out all of the evidence which the Commission has heard, and all of the findings it has made, relevant to these questions. The debtor has been at all times throughout this proceeding extremely vigilant in this regard, and the court believes that the Commission has probably conducted as exhaustive a consideration of the questions of valuation and capitalization as is physically possible. Suffice it to say, that previous to February, 1944, there have been five hearings before the Commission and, in addition, this court has held pre-trial conferences and had a previous hearing in 1941 at which essentially all present objections were considered. In connection with said hearing valuation was considered by deposition and by hearing before a special master, and the court included this matter in its previous opinion. The Commission has, to only partially paint the history of its investigation, gone exhaustively into the history of the debtor corporation, including the development of its physical and financial structure and that of its subsidiaries; into the characteristics of its properties and their condition and improvements; into the traffic experience, year by year, by commodities and revenue tons carried, and by flow of traffic over various parts of the System, and by the prospect for the future; into operating revenues for each year since 1915 by classes and compared by ratios to the total in the preceding year; into expenses and operating ratios since 1915, both maintenance and improvement, and into taxation; into the net earnings available for interest since the debtor has been in existence; and elaborately into the elements of physical value. The extent of the record on these questions is appalling, and it is difficult for the court to understand how anyone could contend that the Commission has omitted to go into every phase of the debtor's existence. The court can find no exception with the record as it now stands sufficient for it to be able to say that the Commission has failed to consider any of the kinds of evidence deemed to be material under the Act by the Supreme Court, or to say that the Commission has not given proper weight and painstaking consideration to the various elements of value in its determinations. Rather, it is the present opinion of this court that the Commission has properly concluded from the facts of record the question of value. The debtor seeks to have the permissible capitalization increased in order that it may participate in the new company, and yet it disregards that any increase sufficient to include the debtor in any respect would have to be tremendous; and this for the reason that too many unsatisfied claims superior to stockholders intervene. The allocation in the plan to bondholders alone fails to equal the total of their claims, and it is estimated that there is at least about $126,000,000 aggregate of deficiencies that would have to be satisfied in full by allocations of new securities before any recognition could be given to stockholders, and this deficiency takes no recognition of the compensation for sacrifices in position that would have to be granted bondholders if the stock were recognized. It is, therefore, evident that prior calls on any new securities are far too large for the debtor to be in the least benefitted except by an increase in capitalization beyond all reason. The Supreme Court has said that it is primarily for the Commission to determine the questions of public interest, and the soundness of the Commission's determination of the permissible capital structure and contingent charges is to a great degree a question of public interest. Certainly there is nothing arbitrary in the Commission's determination here of the probable future earnings and the sound financial structure which those earnings will support.

As to the effective date, the plan contains none it is true, but for the purpose of computing claims for determining allocations in the plan, the date January 1, 1944, was used. The provisions as to the consummation date of the plan have been previously set out in this opinion, and the court feels that the above use of "January 1, 1944" as the so-called effective date (the setting of said date having been held to be within the power of the Commission) adequately complies with the provisions of the law and is in no way arbitrary. An effective date in the Act refers only to the date used in computing allocations and does not mean the date when outstanding rights are modified. The latter date being the consummation date is elaborately provided for in the Plan itself and the court feels that that is all that is required.

The court, therefore, in spite of counsel's able and conscientious advocacy of the stockholders, can find no substance in any of the objections of the debtor, and believes that the contentions therein made are well settled by the above-cited Supreme Court cases. Therefore, the objections of the debtor should also be overruled in their entirety, and it will be so ordered.

The court's attention has been called to the fact that there is a typographical error in the text of the plan before this court, in the 5th paragraph of said plan, under the caption "Treatment of Existing Securities and Claims", wherein, in the first full paragraph on page 19 of the "Commission's Report on the Plan" the date "December 1, 1943" is set out. This date should be "December 31, 1943" and, since the plan reserves the power in the court to cure any defect therein, the court will make this correction in its order of approval. In this connection the plan states: "The construction of the plan by the court, whether before or after the submission of the plan to creditors, shall be final and conclusive. The court, whether before or after submission, may cure any defect, supply any omission, or reconcile any inconsistency, in such manner or to such extent as may be necessary or expedient in order to carry out the plan effectively."

Having considered, therefore, all statutory requirements and overruled all objections to the plan, it is the opinion of the court that the plan should be approved in toto, and to that end counsel is directed to forthwith prepare and, after notice, submit for approval and signature a draft of a decree approving the present Plan of Reorganization, consistent with this opinion and containing all necessary findings and conclusions.

## Appendix A.

Present capital structure and distribution of new securities under the further modified plan,

| Obligations | Principal amount Jan. 1, 1940 | Jan. 1, 1944 | Interest to Dec. 31, 1943 not previously authorized to be paid | Total claims as of Jan. 1, 1944 | Cash payment to be applied to interest | Balance of claims | Undisturbed | First mtge. 4% bonds maturing 50 years from date series A | Second mtge. 4½% income bonds maturing 75 years from date series A² | Preferred stock 5 percent series A³ | Common stock no par value shown at $50 a share | Total capitalization |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Equipment obligations | $ 5,874,000 | $ 2,986,000 | $............ | $ 2,986,000 | $............ | $ 2,986,000 | $2,986,000 | $............ | $............ | $............ | $............ | $ 2,986,000 |
| Fort Scott 4's of 1936 | 25,835,000 | 25,835,000 | 1,584,719 | 27,419,719 | 1,584,719 | 25,835,000 | ........ | 10,337,055 | 6,897,945 | ........ | ........ | 25,835,000 |
| Prior lien 4's of 1950 | 91,887,097 | 91,887,097 | 33,091,234 | 124,883,331 | 1,411,391 | 123,476,940 | ........ | 30,183,274 | 15,712,694 | 30,506,516 | 30,644,347 | 96,386,831 |
| Prior lien 4½'s of 1978 | 22,321,810 | 11,634,601 | 37,195,561 | 37,195,561 | 649,008 | 36,546,553 | ........ | 9,515,830 | 4,652,103 | 9,025,610 | 9,074,332 | 28,705,565 |
| Consolidated 4½'s of 1978 | 108,305,000 | 108,305,000 | 42,387,284 | 150,692,284 | 2,279,835 | 148,412,449 | ........ | 23,535,605 | 27,112,110 | 13,845,070 | 13,845,070 | 23,737,165 |
| Consolidated 6's of 1935 | 10,000,000 | 10,000,000 | 5,419,700 | 16,419,700 | 362,200 | 16,057,500 | ........ | 2,430,000 | 1,740,000 | 1,910,000 | 1,915,000 | 7,995,000 |
| Bank loans 6% of 1932 | | | | | | | | | | | | |
| Chase | 2,492,592 | 2,492,592 | 1,042,386 | 3,534,978 | 151,526 | 3,383,452 | ........ | 1,016,580 | 727,929 | 790,040 | 801,140 | 3,344,703 |
| Guaranty | 1,042,894 | 1,042,894 | 1,042,894 | 1,632,836 | 66,594 | 1,476,212 | ........ | 379,658 | 271,375 | 298,437 | 209,219 | 1,249,219 |
| Central Hanover | 433,469 | 433,469 | 190,555 | 630,124 | 22,638 | 607,486 | ........ | 151,875 | 108,750 | 119,375 | 119,688 | 499,688 |
| Bankers Trust | 422,311 | 422,311 | 185,766 | 618,786 | 22,638 | 599,920 | ........ | 151,875 | 108,750 | 119,375 | 119,688 | 499,688 |
| Mercantile Commerce | 402,113 | 402,113 | 185,897 | 588,010 | 22,637 | 565,373 | ........ | 151,875 | 108,750 | 119,375 | 119,688 | 499,688 |
| First National of St. Louis | 342,584 | 342,584 | 146,280 | 489,264 | 22,637 | 466,627 | ........ | 151,875 | 108,750 | 112,375 | 119,637 | 499,637 |
| | 272,529,460 | 255,711,460 | 96,317,923 | 366,029,283 | 6,585,823 | 359,443,561 | 2,986,000 | 73,335,342 | 47,549,836 | 61,850,732 | 62,057,853 | 247,833,308 |

¹ The debtor's capital stock consists of $40,163,300 of preferred and $65,543,226 of common. The equities of the holders of those stocks have been found to be of no value. The interests of creditors not having priority over one or more of the mortgages found to be of no value.

² Until called for redemption, convertible at the option of the holders into common stock at any time within 5 years after date, at the rate of 30 shares for each $1,000 bond, and thereafter at the rate of 25 shares. Interest is cumulative up to 18 percent.

³ Holders will be entitled, in preference to the holders of the common stock, to receive dividends, when and as declared by the board of directors, at the rate of 5 percent per annum out of the available net income for any calendar year. The dividends will be cumulative to the extent that available net income is applicable (or would have been applicable except for appropriations for capital expenditures) but is not distributed.