09-2707-cv (L), 09-2708-cv (con), 09-2867-cv (con), 09-2710-cv (con), 09-2711-cv (con),
09-2712-cv (con), 09-2713-cv (con), 09-2714-cv (con), 09-2715-cv (con), 09-2716-cv (con), 09-2717-cv (con), 09-2810-cv (con)
NML Capital Ltd. v. Argentina

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: February 2, 2010          Decided: September 23, 2010)

Docket Nos. 09-2707-cv (L), 09-2708-cv (CON), 09-2867-cv (CON), 09-2710-cv (CON),
09-2711-cv (CON), 09-2712-cv (CON), 09-2713-cv (CON), 09-2714-cv (CON),
09-2715-cv (CON), 09-2716-cv (CON), 09-2717-cv (CON), 09-2810-cv (CON)

NML CAPITAL,

*Plaintiff-Appellee-Cross-Appellant,*

MONTREUX PARTNERS, CORDOBA CAPITAL, LOS ANGELES CAPITAL, FFI
FUND & FYI, WILTON CAPITAL,

*Plaintiffs-Appellees*,

—v.—

REPUBLIC OF ARGENTINA,

*Defendant-Appellant-Cross-Appellee*.

_____

Before:

CALABRESI, RAGGI, and CUDAHY,[*] *Circuit Judges.*

_____

[*] Circuit Judge Richard D. Cudahy of the United States Court of Appeals for the
Seventh Circuit, sitting by designation.

Cross-appeals from a judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*) in favor of plaintiffs on certain Floating Rate Accrual Notes. Defendant contends that it was entitled to reformation of the notes because the interest rate provision at issue constitutes an unenforceable penalty, produces substantively unconscionable results, and violates public policy. Defendant further faults the district court's award of statutory interest in addition to contract interest for deficient post-maturity interest payments. Plaintiff NML Capital argues that the district court erred in not awarding it statutory interest for unpaid post-acceleration interest payments. Although we reject as without merit defendant's arguments in favor of reformation, we conclude that plaintiffs' entitlement to statutory interest on unpaid post-maturity and/or post-acceleration interest payments depends on significant and unsettled questions of New York law, which we hereby certify to the New York Court of Appeals.

AFFIRMED in part. Decision RESERVED in part pending the New York Court of Appeals' response to certified questions of state law.

———————

CARMINE D. BOCCUZZI (Jonathan I. Blackman, Christopher P. Moore, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, New York, *for Defendant-Appellant-Cross-Appellee Republic of Argentina*.

THEODORE B. OLSON (Matthew D. McGill, Jason J. Mendro, Gibson, Dunn & Crutcher LLP, Washington, D.C.; Robert A. Cohen, Dennis H. Hranitzky, Dechert LLP, New York, New York; Walter Rieman, Paul, Weiss, Rifkind,

2

Wharton & Garrison LLP, New York, New York; Stephen D. Poss, Robert D. Carroll, Goodwin Procter LLP, Boston, Massachusetts, *on the brief*), Gibson, Dunn & Crutcher LLP, Washington, D.C., *for Plaintiffs-Appellees Montreux Partners, Cordoba Capital, Los Angeles Capital, FFI Fund & FYI, and Wilton Capital; Plaintiff-Appellee-Cross-Appellant NML Capital.*

---

REENA RAGGI, *Circuit Judge*:

In this action to recover principal and interest owed by the Republic of Argentina on certain Floating Rate Accrual Notes, the parties cross-appeal from a judgment entered in the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*) in favor of plaintiffs. Appellant Argentina contends that it was entitled to reformation of the notes because the relevant interest rate was unenforceable as a penalty, substantively unconscionable, or void on account of public policy. Argentina further faults the district court for awarding statutory interest in addition to contract interest on defaulted post-maturity (but not post-acceleration) interest payments. Meanwhile, cross-appellant NML Capital argues that the district court erred in denying it statutory interest for unpaid post-acceleration interest. We conclude that Argentina's appeal is without merit insofar as it challenges the district court's refusal to reform the notes, but that the parties' cross-appeals of the treatment of statutory interest turn on significant and unsettled questions of New York law, which we certify to the New York Court of Appeals as stated in Part II.C. of this opinion.

3

I. **Background**

A. Plaintiffs' Acquisition of Beneficial Interests in Argentina's Floating Rate Accrual Notes

In 1998, at a time when its economy was relatively stable, Argentina issued a series of securities known as Floating Rate Accrual Notes ("FRANs"). These securities, which – as their name suggests – bear interest at a floating rate, were issued pursuant to a Fiscal Agency Agreement ("FAA") dated October 19, 1994; a Prospectus dated March 27, 1998; a Prospectus Supplement also dated March 27, 1998; and a Floating Rate Accrual Notes Certificate (the "FRANs Certificate") dated April 13, 1998 (collectively, "the bond documents").[1]

Plaintiffs are holders of beneficial interests in the FRANs. Some of plaintiffs' interests were purchased on the secondary market after Argentina's 2001 financial collapse and, in certain instances, after the FRANs' stated April 2005 maturity date. Other interests were purchased prior to the collapse, but at a time when Argentina's debt was trading at a steep discount given the prevailing view that financial collapse was imminent.

B. The FRANs Certificate and the FAA

According to the terms of the FRANs Certificate, Argentina

promise[d] to pay Cede & Co. or registered assigns[] the principal sum of two hundred million U.S. dollars . . . on April 10, 2005 . . . , and to pay interest thereon . . . every six months in arrears on April 10 and October 10 in each

---

[1] By their terms, the bond documents are governed by New York law.

4

year . . . at the rate set forth below, until the principal hereof is paid or made available for payment.

FRANs Certificate at A-1. The interest rates for each six-month payment period were to be calculated and published by a Determination Agent, which – in this case – was Morgan Stanley. The formula used to calculate those interest rates ("FRANs interest rate provision") was based on the yields to maturity of other Argentine-issued debt and thus accounted for any risk the market associated with the purchase of such debt.[2] Consequently, the interest rate on the FRANs would fluctuate in accordance with Argentina's creditworthiness at any particular time. This structure arguably provided an incentive for those who were familiar with Argentina's troubled financial history and, as result, concerned about a potential default nevertheless to invest in the FRANs.[3]

Under the terms of the FAA, Argentina's "fail[ure] to pay any principal of any of the Securities of [any] Series when due and payable or [its] fail[ure] to pay any interest on any

---

[2] Yield to maturity is "the amount of money in excess of cost, expressed as a percentage, that would be realized on a bond assuming that the borrower made all interest and principal payments on schedule." Appellees' Br. at 9 n.2. The riskier the bond, the higher the yield to maturity, as such bonds generally sell at a discount from par value (i.e., at a cheaper cost) and will therefore generate greater returns where a borrower adheres to the required payment schedule. In calculating applicable interest, the FRANs interest rate provision identified a baseline rate by averaging the yields of Argentina's 11% Bonds due October 9, 2006 ("2006 Bonds"). Additional interest was then added to that baseline rate when the "spread" – that is, the difference between the yield to maturity of Argentina's 9.75% Global Bonds due September 19, 2027 ("2027 Bonds") and the yield to maturity of the U.S. Treasury's 30-year bond – was equal to or above a defined threshold.

[3] See, e.g., EM Ltd. v. Republic of Argentina, 473 F.3d 463, 466 n.2 (2d Cir. 2007) (recounting Argentina's history of defaulting on its sovereign obligations).

5

of the Securities of such Series when due and payable" constituted an event of default so long as the failure continued for a period of 30 days. FAA at 17. Argentina's declaration of "a moratorium on the payment of principal of, or interest on, [its] Public External Indebtedness" also constituted an event of default.[4] Id. at 18. In the event of any such defaults, holders of any of the securities were afforded the right to accelerate the securities and declare the principal "due and payable immediately." Id. The FRANs Certificate, which repeats these default provisions, makes clear that it "and all rights of the registered Holder [t]hereof are expressly subject to the [FAA]." FRANs Certificate at A-7. Indeed, it states that the "Security and the [FAA] together constitute a contract, all the terms and conditions of which the registered holder by acceptance [t]hereof assents to and is deemed to have notice of." Id.

C.    Argentina's December 2001 Financial Collapse

Prior to October 2001, the FRANs interest rates published by Morgan Stanley ranged from 9% to 14.4% per annum. In late 2001, however, Argentina experienced a severe economic crisis. As a result of this crisis, on December 20, 2001, Argentina announced that it would no longer service its approximately $80 billion in external debt, including both the FRANs and the 2006 and 2027 Bonds whose yields to maturity were factors in the FRANs interest rate provision. As a consequence, the notional yields to maturity on these bonds

---

[4] Under the terms of the FAA, external debt refers to "obligations (other than the Securities) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of [Argentina]." FAA at 16.

increased, thereby raising the interest rates applicable to the FRANs. At the time Argentina announced its intention to cease service of its external debt, the semiannual interest rate on the FRANs as calculated by Morgan Stanley was 12.703%. Thereafter, it continued to climb, reaching 50.526% (or roughly 101% per annum) by the time of the FRANs' April 2005 maturity date.[5]

In addition to increasing the prevailing interest rates, Argentina's decision to declare a moratorium on the service of external debt triggered plaintiffs' contractual right to accelerate the FRANs. While most plaintiffs declined to exercise this right, NML accelerated the maturity of $32 million of the $102 million in FRANs principal that it had purchased on the secondary market. In 2005, Argentina offered holders of certain of its defaulted debts the opportunity to exchange their beneficial interests in those debts for performing, but discounted, debt taking the form of guaranteed loans. According to plaintiffs, because the offer would have permitted them to recoup only 15-25% of what they were owed, they did not accept this offer.

D.    Procedural History

In a series of lawsuits filed in the Southern District of New York, plaintiffs sued Argentina for its failure to pay principal and interest due under the FRANs. Following

_____

[5] Morgan Stanley's term as Determination Agent expired in April 2005. Because Argentina did not renew the appointment or name a replacement, there were no calculations of the floating interest rate under the FRANs after that time.

motions filed by plaintiffs from 2005 to 2008 in each of the cases underlying this appeal, the district court awarded plaintiffs summary judgment as to Argentina's liability under the FRANs and directed the parties to confer to determine the exact amounts in which final judgment should be entered. When no agreement was reached, plaintiffs jointly moved on April 10, 2008, for partial summary judgment as to the amount of interest Argentina owed on the FRANs. In particular, they sought application of the floating interest rates calculated and published by Morgan Stanley for the various six-month payment periods occurring through the 2005 maturity date. For purposes of calculating post-maturity interest, plaintiffs sought application of the 50.526% interest rate that governed the payment period ending on April 9, 2005. Finally, plaintiffs sought to collect further interest at the 9% statutory rate for all interest payments – whether due and owing prior to or after acceleration or maturity – that Argentina had failed to make.

In opposing plaintiffs' motion for partial summary judgment, Argentina argued that the FRANs interest rate provision was unenforceable and/or subject to reformation because it (1) constituted an unreasonable penalty; (2) effected a substantively unconscionable result; and (3) violated public policy, specifically New York usury law. Argentina further argued that plaintiffs were not entitled to 9% "interest on interest" for post-acceleration interest payments that it had allegedly missed.

On March 18, 2009, the district court granted in part and denied in part plaintiffs' motion for partial summary judgment. Finding that "the interest rate mechanism specified

8

by the FRANs was employed to determine [Argentina]'s obligations under the contract[,] not its obligations resulting from a breach," the district court concluded that the FRANs interest rate provision was not a liquidated damages clause and, therefore, not subject to the rule that such clauses are unenforceable when they function as penalties. NML Capital, Ltd. v. Republic of Argentina, No. 05 Civ. 2434, 2009 WL 721736, at *3 (S.D.N.Y. Mar. 18, 2009). Turning to Argentina's unconscionability claim, the district court determined that there was no basis for finding either procedural or substantive unconscionability, as Argentina was a sophisticated party capable of understanding the contractual terms that it had itself proposed and the FRANs interest rate provision was reasonable at the time of contract. See id. at *3-4. In so holding, the court rejected Argentina's contention that events occurring after the time of contract were relevant to the substantive unconscionability inquiry and, therefore, warranted consideration. See id. at *4. Because the district court determined that New York's usury law did not apply to transactions as large as the one at issue, it further rejected Argentina's argument that the FRANs interest rate provision was unenforceable as a violation of the public policy expressed in such law. See id. at *4-5. Finally, relying on this Court's prior decision in Capital Ventures International v. Republic of Argentina, 552 F.3d 289 (2d Cir. 2009), the district court ruled that plaintiffs were not entitled to 9% statutory interest on any interest payments that had allegedly become due after acceleration of the bonds. See NML Capital, Ltd. v. Republic of Argentina, 2009 WL 721736, at *5-6. It did, however, permit plaintiffs to "seek[] statutory interest on unpaid contract interest accruing

9

before acceleration, or where acceleration never occurred." Id. at *6. This conclusion was based, at least in part, on the court's finding that Argentina "ha[d] not objected to the accrual of statutory prejudgment interest" in such circumstances. Id. at *5. In light of these holdings, the district court again advised the parties to confer and submit proposed final judgments.

The proposed judgments subsequently submitted by plaintiffs included (1) all outstanding principal, (2) missed interest payments that came due prior to maturity or acceleration, (3) 9% statutory interest on those missed interest payments, (4) interest on the principal at the rate provided by the contract from the date of maturity or acceleration to the date of judgment, and (5) 9% statutory interest on missed post-maturity interest payments that Argentina was purportedly obligated to pay. Citing Capital Ventures, Argentina objected to the fifth component of plaintiffs' proposed judgments and submitted counter-proposals omitting such statutory interest.

Following the parties' submission of further letter briefing, the district court issued a May 29, 2009 opinion holding that plaintiffs were entitled to statutory interest on unpaid interest payments due after maturity because the FRANs Certificate provided that Argentina was obligated to pay interest every six months "until the principal hereof is paid." NML Capital, Ltd. v. Republic of Argentina, No. 05 Civ. 2434, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009) (internal quotation marks omitted). In reaching this conclusion, the district court first observed that because Argentina contested plaintiffs' entitlement to statutory

10

interest only with respect to the single case in which payment of the principal was accelerated, it had waived any argument that plaintiffs were not entitled to statutory interest in those instances where there was no acceleration but where Argentina's obligation to make contract interest payments continued after maturity. See id. The district court further noted that, even absent waiver, the argument was meritless, as neither the March 18 opinion nor this court's decision in Capital Ventures "applie[d] to an award of interest where payments ha[d] not been accelerated." Id. Thereafter, and in accordance with its March 18 and May 29, 2009 opinions, the district court entered the judgments in plaintiffs' favor here at issue.

## II. Discussion

### A. Standard of Review

We review a district court's ruling on a motion for summary judgment de novo, see Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008), as we do the determination whether a contractual provision is an unenforceable penalty, unconscionable, or void on account of public policy, see International Bhd. of Elec. Workers v. Niagara Mohawk Power Corp., 143 F.3d 704, 726 (2d Cir. 1998); JMD Holding Corp. v. Congress Fin. Corp., 4 N.Y.3d 373, 379, 795 N.Y.S.2d 502, 506 (2005); Scott v. Palermo, 233 A.D.2d 869, 872, 649 N.Y.S.2d 289, 291 (4th Dep't 1996). Summary judgment is proper only if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Redd v.

11

Wright, 597 F.3d 532, 535-36 (2d Cir. 2010).

     B.    Reformation

       1.    Penalty

Argentina contends that the FRANs interest rate provision is unenforceable because it operates as a penalty. We are not persuaded.

Under New York law, a "contractual provision fixing damages in the event of breach" constitutes an unenforceable penalty where "the amount fixed is plainly or grossly disproportionate to the probable loss." JMD Holding Corp. v. Congress Fin. Corp., 4 N.Y.3d at 380, 795 N.Y.S.2d at 507 (internal quotation marks omitted). Whether the interest rates set by the controlling provision are reasonable in proportion to probable loss need not be decided here, however, because the provision – which is neither dependent on, nor affected by, Argentina's performance or non-performance under the bond documents – is not a liquidated damages clause at all. Instead, it simply establishes the rate at which Argentina is required to compensate holders of the FRANs for its use of principal.

Although Argentina attempts to position its "default" – that is, its December 2001 decision to discontinue servicing all of its external debt, including the FRANs – as the event that precipitated the challenged interest rates, its efforts are unavailing. The moratorium on the servicing of external debt violated no provision contained in the bond documents. It simply altered Argentina's creditworthiness and – because the interest rate provision accounts for such creditworthiness – had the effect of raising the applicable interest rates.

12

While the moratorium constituted an event of default under the bond documents, its only consequence was to afford plaintiffs the right to accelerate the bonds. It did not alter the formula outlined in the rate provision. Accordingly, the resulting interest rates cannot be deemed "default interest rates." Indeed, had Argentina continued making interest payments on the FRANs, but adhered to the moratorium with respect to its service of all other external debt, similar interest rates would have obtained.

In sum, because Argentina has not demonstrated that the FRANs interest rate provision fixes damages for a breach of the bond documents, the provision cannot be considered a liquidated damages clause subject to review as an excessive penalty. See Kirby v. United States, 260 U.S. 423, 427 (1922) (concluding that contractual provision was "neither a penalty nor liquidated damages [because it] was not to be paid for any breach of contract"); Lipsky v. Commonwealth United Corp., 551 F.2d 887, 896 n.15 (2d Cir. 1976) (concluding that provision was "not a liquidated damages clause since it ha[d] nothing to do with a party's breach; it merely compensated [one party] for any loss due to registration delay").

### 2. Unconscionability

Argentina next contends that it was entitled to reformation on the ground that the FRANs interest rate provision "produced post-default interest rates so grossly unreasonable and unfair to [Argentina] as to render it substantively unconscionable and thus unenforceable under New York law." Appellant's Br. at 29. This argument is also without merit.

"The doctrine of unconscionability seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties." United States v. Martinez, 151 F.3d 68, 74 (2d Cir. 1998) (internal quotation marks omitted). In general, a provision will be deemed unenforceable on unconscionability grounds only where it is "both procedurally and substantively unconscionable when made." Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 791 (1988). Because Argentina does not seriously contend that the process leading to the execution of the bond documents was flawed, it cannot demonstrate procedural unconscionability. While there are some "exceptional cases where a provision of [a] contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone," id. at 12, 537 N.Y.S.2d at 792; see also Brower v. Gateway 2000, Inc., 246 A.D.2d 246, 254, 676 N.Y.S.2d 569, 574 (1st Dep't 1998), this is not such a case.

Argentina's unconscionability argument reduces to the disingenuous claim that "no party negotiating the FRANs agreements in 1998 could have contemplated [Argentina]'s unprecedented across-the-board default in 2001," Appellant's Br. at 34, or the "astronomical interest rates" that would result, id. at 11. In fact, the bond documents explicitly define Argentina's declaration of "a moratorium on the payment of principal of, or interest on, [its] Public External Indebtedness" as an event of default giving bondholders the right to accelerate the bonds. FAA at 18; accord FRANs Certificate at A-10. This language confirms not only that the parties could have contemplated such a default, but that they did

14

and expressly agreed to its consequences.  Moreover, given Argentina's default history and the knowledge that sophisticated parties like Argentina and the prominent New York City law firm representing it presumably possessed regarding the impact of a sovereign's impaired creditworthiness on its bonds' yields to maturity, Argentina can hardly profess surprise or prejudice at the consequences of its decision to discontinue paying any principal or interest on its external debt.  See Westinghouse Elec. Corp. v. N.Y.C. Transit Auth., 82 N.Y.2d 47, 55, 603 N.Y.S.2d 404, 408 (1993) ("The bedrock of the doctrine of unconscionability is the prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risk." (omission in original; internal quotation marks omitted)).

Argentina has pointed to no authority – and we are aware of none – finding an agreement involving parties of like sophistication unenforceable on substantive unconscionability grounds.  Unlike in Industralease Automated & Scientific Equipment Corp. v. R.M.E., 58 A.D.2d 482, 396 N.Y.S.2d 427 (2d Dep't 1977), which Argentina cites for the proposition that events occurring after it executed the bond documents are properly considered in determining whether the FRANs interest rate provision is substantively unconscionable,[6] there is no basis for concluding that the FRANs "achieved none of the

_____

[6] We are, in any event, doubtful that Industralease provides a sufficient basis for identifying error in the district court's refusal to consider post-contract events as bearing on its substantive unconscionability determination, as the decision's robustness has been called into question.  See Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003) ("Treatises dutifully cite Industralease as the lone exception to the general rule set forth in § 2-302 [of the Uniform Commercial Code that unconscionability is assessed at the time of

15

purposes of the parties."  Id. at 490, 396 N.Y.S.2d at 432.  While Argentina may regret the ultimate cost of its bargain, the FRANs achieved their intended goal of providing Argentina with access to capital despite impediments presented by its troubled financial history and investors' wariness of purchasing its debt.  On this record, we decline to conclude that the FRANs interest rate provision is substantively unconscionable.

> 3.    Usury

Equally unconvincing is Argentina's argument that the FRANs interest rate provision is unenforceable in light of New York's public policy against usury.  See N.Y. Penal Law §§ 190.40, 190.42 (criminalizing adoption of interest rates exceeding 25%).  The usury laws are expressly inapplicable where the sum involved is equal to or greater than $2.5 million and, therefore, do not apply to the facts of this case.  See N.Y. Gen. Oblig. Law § 5-501(6)(b) ("No law regulating the maximum rate of interest which may be charged, taken or received, including section 190.40 and section 190.42 of the penal law, shall apply to any loan or forbearance in the amount of two million five hundred thousand dollars or more.").

Argentina concedes the technical inapplicability of the criminal usury law but nevertheless contends that the district court should have considered the law in determining

_____

contract], and a search for other cases applying this exception in New York has yielded only a single decision issued by a small claims court." (internal citation omitted)).  We need not resolve the matter, however, because even assuming the propriety of a court considering events occurring after the time of contract, we identify nothing substantively unconscionable about the FRANs or the relevant interest rate provision under the totality of the circumstances.

16

whether the interest rate provision was enforceable. While courts have looked to the usury law for assistance in determining whether a contractual provision is enforceable, Argentina cites no instance – and we are aware of none – in which courts have done so under circumstances that the legislature expressly exempted from the scope of the law. Given the text of § 5-501(6)(b) of the General Obligations Law and the case law construing it, we cannot conclude that the legislature's intent was anything other than to permit parties negotiating the terms applicable to the borrowing and repayment of sums of $2.5 million or more to choose to incorporate interest rates higher than 25%. See In re Venture Mortg. Fund, L.P., 282 F.3d 185, 189 (2d Cir. 2002) (noting, in dictum, that because borrower to large loan transaction is less likely to need or deserve financial protection and because forfeiture of large amounts is more unsettling to financial arrangements, "no New York usury law prohibits, voids, or regulates transactions over $2.5 million, a financial plane above which all players apparently are deemed to be able to fend for themselves"). For the foregoing reasons, the criminal usury law provides no basis for deeming the FRANs interest rate provision unenforceable.

C.    Statutory Prejudgment Interest

Argentina does not dispute its obligation to pay statutory interest on the bi-annual interest payments it failed to make prior to the FRANs' stated maturity date. It does, however, challenge the award of statutory interest on unpaid, post-maturity interest payments as contrary to this court's decision in Capital Ventures International v. Republic of

17

*Argentina*, 552 F.3d 289. NML cross-appeals, arguing that Capital Ventures was wrongly decided or is otherwise distinguishable and that the district court therefore erred in denying NML statutory interest on interest payments that came due after NML exercised its right of acceleration. Because resolution of these claims turns on significant questions of New York law not settled for purposes of this case by our decision in Capital Ventures, we certify those questions to the New York Court of Appeals and defer decision on the matter pending that court's response.[7]

### 1. Statutory Interest on Missed Post-Maturity Interest Payments

Argentina's interest challenge requires us to consider (1) whether the bond provision requiring Argentina to make bi-annual interest payments on principal "until the principal hereof is paid" is properly construed as an obligation to pay interest for so long as the principal is outstanding, including after the date of maturity; and (2) if so, whether that

---

[7] Although the district court concluded that Argentina had waived any challenge to the award of statutory interest on missed post-maturity interest payments by challenging statutory interest only in the context of missed post-acceleration interest payments, we conclude that the formulation of Argentina's argument was a direct response to plaintiffs' arguments in favor of statutory interest. Having reviewed both parties' arguments below, we are satisfied that Argentina reasonably interpreted plaintiffs' claim to relate only to statutory interest for missed post-acceleration interest payments. While plaintiffs may have clarified their intent to seek statutory interest for missed post-acceleration and post-maturity interest payments during the course of the proceedings, we decline to construe Argentina's initial failure to contest statutory interest on missed post-maturity interest payments as waiving such a challenge. In any event, even if the challenge were waived, we would nevertheless exercise our discretion to address the merits of Argentina's claim. See In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 133 (2d Cir. 2008) (noting that because "our waiver doctrine is entirely prudential," we have "discretion to consider arguments waived below").

18

obligation provides a valid basis for awarding statutory interest under New York law on post-maturity interest payments that came due but were never paid.

Under New York law, prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a). The New York Court of Appeals has held that § 5001(a) "permits a creditor to recover prejudgment interest on unpaid interest and principal payments awarded from the date each payment became due under the terms of the promissory note to the date liability is established." Spodek v. Park Prop. Dev. Assocs., 96 N.Y.2d 577, 581, 733 N.Y.S.2d 674, 676 (2001). The payment of such interest makes creditors whole by recognizing the benefits that a debtor obtains – and that a creditor is deprived of – when the debtor has use of the funds at issue during the pendency of litigation. See id. at 581-82, 733 N.Y.S.2d at 676-77. In determining the rate of interest to be recovered for unpaid principal, it is well-established that "'when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in CPLR 5004, governs until payment of the principal or until the contract is merged in a judgment.'"[8] NYCTL 1998-2 Trust v. Wagner, 61 A.D.3d 728, 729, 876 N.Y.S.2d 522, 523 (2d Dep't 2009) (quoting Citibank, N.A. v. Liebowitz, 110 A.D.2d 615, 615, 487 N.Y.S.2d 368, 369 (2d Dep't 1985)); see also O'Brien

---

[8] N.Y. C.P.L.R. § 5004 states that "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."

19

v. Young, 95 N.Y. 428, 429-30 (1884).

In Capital Ventures, we applied this New York law in deciding a similar interest dispute involving Argentine bonds, i.e., whether a bondholder was entitled to statutory prejudgment interest on interest payments it claimed Argentina failed to make after acceleration of bonds governed by some of the same bond documents here at issue. See 552 F.3d at 292-93. There, as here, Argentina was obligated to pay interest on the principal "until the principal . . . [was] paid." Id. at 292 (ellipsis in original). Although the relevant agreement contemplated, but did not identify, periodic dates on which interest would be due, we noted that its acceleration provision "d[id] not specify whether or not interest [was] due on the periodic dates after any acceleration." Id. We further observed that "[t]he normal consequence of acceleration is that interest payments that would have been due in the future are no longer due, because, after acceleration, the entire principal is immediately due and owing; in other words, future interest payments are 'unearned' because the creditor is no longer loaning the debtor the principal." Id. at 296. Finding "nothing [in the language of the underlying bond documents] to demonstrate that the parties intended to displace the normal meaning of acceleration with a concept of acceleration that allow[ed] interest to continue to come due after the principal [was] accelerated," we concluded that the district court properly refused to award statutory interest on the unpaid, post-acceleration interest payments alleged by the bondholder. Id. at 297 (noting that language providing that Argentina would pay

interest until principal was paid was "truism" that lacked specificity required to "alter the traditional concept of acceleration").

Although Argentina contends that a similar result should obtain here, this case involves post-maturity interest payments and hinges on a provision that – although nearly identical to the provision at issue in Capital Ventures – actually specifies the bi-annual dates on which interest payments are due. We did not consider such circumstances in Capital Ventures, and we do not think existing New York law settles the questions before us. The following analysis informs that conclusion.

As in Capital Ventures, the provision here at issue does not contain any language explicitly stating that the parties contemplated periodic payment of interest after the FRANs' April 10, 2005 maturity date. In addition, there is some support in New York law for the view that no meaningful difference exists between the post-acceleration and post-maturity contexts, as acceleration merely advances the stated maturity date and – like maturity – causes a principal sum to become due and payable immediately. See Northwestern Mut. Life Ins. Co. v. Uniondale Realty Assocs., 11 Misc. 3d 980, 982-83, 816 N.Y.S.2d 831, 834 (N.Y. Sup. Ct. 2006) ("'Acceleration' is a change in the date of maturity from the future to the present. . . . Any payment made after acceleration of the maturity date is payment made after maturity, not before." (emphasis in original; internal quotation marks omitted)). While these facts might appear to weigh in favor of a conclusion that the challenged award of statutory

21

interest is foreclosed by Capital Ventures, plaintiffs argue that – in light of their identification of specific dates on which bi-annual interest payments are to be made – the bond documents' use of the phrase "until the principal hereof is paid" may be interpreted as permitting interest to continue to come due after the FRANs' stated maturity date.

In considering this argument, we are mindful that "[w]hen interpreting a state law contract, . . . an established definition provided by state law or industry usage will serve as a default rule, and that definition will control unless the parties explicitly indicate, on the face of their agreement, that the term is to have some other meaning." Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 617-18 (2d Cir. 2001); see International Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (noting that contract is construed according to understanding of "reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business" (emphasis added)); see generally Robinson v. United States, 80 U.S. (13 Wall.) 363, 366 (1871) ("Parties who contract on a subject-matter concerning which known usages prevail, by implication incorporate them into their agreements, if nothing is said to the contrary."). We are aware of no New York authority, and certainly no authority from the New York Court of Appeals, construing a bond provision requiring the periodic payment of interest "until the principal hereof is paid." Plaintiffs, however, contend that "[d]rafters of bonds have long

22

understood the elementary distinction between bonds requiring interest payments until the principal is _paid_ and bonds requiring interest payments only until the principal is _due_." Appellees' Br. at 42 (emphases in original). In support, they rely on the American Bar Foundation's 1971 Commentaries on Model Debenture Indenture Provisions ("Commentaries"), which we have observed provide "[h]elpful guidance" in construing indenture provisions, In re Metromedia Fiber Network, Inc., 416 F.3d 136, 139 (2d Cir. 2005), and which New York courts have cited favorably, see Feder v. Union Carbide Corp., 141 A.D.2d 799, 800-01, 530 N.Y.S.2d 165, 167 (2d Dep't 1988). According to the Commentaries, where a provision requires the payment of interest until the principal is "paid or made available for payment . . . [,] the one interest rate [i.e., the contractual rate] shall be applicable, whether prior to or after the stated maturity, until the principal is paid." American Bar Foundation, Commentaries 115 (emphasis added).[9] Although the statement does not explicitly reference periodic interest payment provisions, we identify no reason they would fall outside the Commentaries' specification of accepted industry meaning.

The Commentaries do not, of course, provide authoritative guidance on New York law. Nor do the other authorities cited by plaintiffs conclusively demonstrate that Argentina was obligated to make bi-annual post-maturity interest payments, much less that the failure

_____

[9] A provision providing that "interest shall be payable semi-annually . . . until the principal hereof shall have become due and payable" may, by contrast, "lead to a very different result." American Bar Foundation, Commentaries 115.

23

to do so entitles plaintiffs to statutory prejudgment interest. In re Realty Associates Securities Corp., 163 F.2d 387 (2d Cir. 1947), like the Commentaries, makes clear that where a contract "provides for payment of interest until the principal shall be paid," interest on the principal accrues at the contract rate – rather than the statutory rate – even after the date of maturity. Id. at 389 (internal quotation marks omitted). Argentina does not, however, dispute its obligation to pay contract interest on the principal from the date of maturity to the date of entry of judgment. Instead, it takes issue with plaintiffs' contention that it is required to continue making bi-annual interest payments after maturity and that plaintiffs are therefore entitled to statutory interest on any such payments that were not made. Because In re Realty Associates has no bearing on the proper interpretation of the provision upon which plaintiffs rely, it does not control plaintiffs' entitlement to statutory interest.

Plaintiffs' reliance on In re Foamex International Inc., 382 B.R. 867 (D. Del. 2008) (applying New York law), is equally unavailing. Plaintiffs argue that In re Foamex holds "that an indenture providing for semiannual interest payments 'until the principal is paid in full' continues to require such payments regardless of whether that full payment occurs subsequent to the Note's maturity date." Appellees' Br. at 43 (internal quotation marks omitted). However, we read the decision to hold simply that where an indenture requires the payment of compound interest prior to maturity, an until-the-principal-is-paid provision requires payment of interest at the same compound rate after maturity. See In re Foamex

Int'l Inc., 382 B.R. at 870. In announcing its holding, the court did refer to the "continuation of compound interest payments." Id. But when that phrase is viewed in context, the court's holding appears to signal nothing more than the unremarkable proposition that interest will be calculated at the contract rate (which in that case happened to involve compound interest) from the date of maturity to the date of judgment. As in In re Realty Associates, nowhere in In re Foamex did the court consider, much less address, whether the failure to make periodic interest payments after maturity could support an award of statutory interest under New York law.

Given the ability of both parties to cite colorable but not authoritative support for their conflicting positions on the interest issue in question, we are unable to determine whether the district court's award of statutory interest on any unpaid, post-maturity interest payments comports with New York law. Accordingly, we now ask the New York Court of Appeals to clarify (1) whether a bond provision requiring the issuer of the bond to make, on dates certain, bi-annual interest payments on principal "until the principal hereof is paid" is properly construed as an obligation to pay interest for so long as the principal is outstanding, including after the date of maturity; and (2) if so, whether that obligation provides a valid basis for awarding statutory interest under N.Y. C.P.L.R. § 5001(a) on post-maturity interest payments that came due but were never paid.

25

### 2.     Statutory Interest on Missed Post-Acceleration Interest Payments

In cross-appealing the district court's denial of statutory interest on Argentina's missed post-acceleration interest payments, NML argues that Capital Ventures was wrongly decided. We are not free to entertain that argument, as it is axiomatic that a panel of this court is "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." In re Zarnel, --- F.3d ----, 2010 WL 3341428, at *11 (2d Cir. 2010) (internal quotation marks omitted). Nevertheless, because the FRANs' specification of dates certain for the payment of bi-annual interest, together with the requirement that such payments be made "until the principal hereof is paid," may distinguish the instant case from Capital Ventures, we think it prudent to certify a third question to the New York Court of Appeals: Is a bond provision requiring the issuer of the bond to make, on dates certain, bi-annual interest payments on principal "until the principal hereof is paid" properly construed as an obligation to pay interest for so long as the principal is outstanding, including after acceleration?[10]

### 3.     Certification Standards

Under New York law, we are permitted to certify to the New York Court of Appeals "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." 22 N.Y.C.R.R.

---

[10] If the New York Court of Appeals decides to answer this question, that court, unlike this court, is of course not bound by Capital Ventures' interpretation of New York law.

§ 500.27(a); see also 2d Cir. R. 27.2(a) ("If state law permits, the court may certify a question of state law to that state's highest court."). We conclude that this case warrants certification for several reasons.

First, "[c]ertification is proper when . . . we are confronted with a dispositive complex question of New York common law for which no New York authority can be found." White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 285 (2d Cir. 2006) (internal quotation marks omitted). As we have observed, no New York court has addressed the proper interpretation of a bond provision requiring the bi-annual payment of interest on dates certain "until the principal hereof is paid." Nor has any New York court construed similar language in an analogous context such that "sufficient precedents exist for us to make [a] determination" of the issue before us. Tinelli v. Redl, 199 F.3d 603, 606 n.5 (2d Cir. 1999) (alteration in original) (internal quotation marks omitted).

Certification also depends on the degree to which "the question implicates issues of state public policy," "the importance of the issue to the state[,] . . . the likelihood that the question will recur, and the capacity of certification to resolve the litigation." White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d at 285 (internal quotation marks omitted). Here, Argentina does not dispute, let alone disprove, plaintiffs' assertion that "many contracts contain . . . language [comparable to that at issue] . . . and that countless investors [rely] on that language." Appellees' Br. at 54. Accordingly, we conclude not only that the question

27

at issue is significantly likely to recur, but also that the likelihood of recurrence plainly renders the proper meaning of the bond provision "an important policy issue for a state that plays a pivotal role in international commerce." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 166 (2d Cir. 2007). Further, as we have resolved all aspects of the parties' dispute besides statutory prejudgment interest, resolution of the questions certified will bring the litigation before us to an end.

### III.  Conclusion

To summarize, we reach the following conclusions:

1.  Argentina has not demonstrated that the FRANs interest rate provision constitutes an unenforceable penalty, effects a substantively unconscionable result, or violates public policy so as to warrant reformation.

2.  The parties' conflicting arguments challenging the district court's statutory interest award are not resolved by our decision in Capital Ventures International v. Republic of Argentina, 552 F.3d 289, nor by established New York law. Accordingly, we certify the following questions to the New York Court of Appeals:

    (a)  Is a bond provision requiring the issuer of the bond to make, on dates certain, bi-annual interest payments on principal "until the principal hereof is paid" properly construed as an obligation to pay interest for

28

so long as the principal is outstanding, including after the date of maturity?

(b)     Is a bond provision requiring the issuer of the bond to make, on dates certain, bi-annual interest payments on principal "until the principal hereof is paid" properly construed as an obligation to pay interest for so long as the principal is outstanding, including after acceleration?

(c)     If either of the foregoing questions is answered in the affirmative, does that obligation provide a valid basis for awarding statutory interest under N.Y. C.P.L.R. § 5001(a) on post-maturity or post-acceleration interest payments that came due but were never paid?

In certifying these questions, we do not bind the Court of Appeals to the particular questions stated. Rather, the Court of Appeals may expand these certified inquiries to address any further pertinent question of New York law involved in this appeal. This panel retains jurisdiction and will consider any issues that may remain on appeal once the New York Court of Appeals has either provided us with its guidance or declined certification.

It is therefore ORDERED that the Clerk of this court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs, appendices, and the record filed in this court by the parties.

AFFIRMED in part. Decision RESERVED in part.

29

## IV.     Certificate

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to 2d Cir. R. 27.2 and 22 N.Y.C.R.R. § 500.27, as ordered by the United States Court of Appeals for the Second Circuit.