No. 09-3682-cv
Stein v. County of Nassau

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 8th day of April, two thousand eleven.

PRESENT:  CHESTER J. STRAUB,
             ROBERT D. SACK,
             GERARD E. LYNCH,
                      *Circuit Judges.*

-------------------------------------------------------------------

MILTON STEIN, by Rita Stein, Executrix of the Estate of Milton Stein, and RITA STEIN,
                *Plaintiffs-Appellants*,

         v.                                         No. 09-3682-cv

OFFICER PAUL BARTHELSON, DIOMEDES DIAZ, Ambulance Medical Technician, OFFICER ANTHONY D'ALTO, OFFICER JAMES WHITTAKER,
                *Defendants-Appellees*,

COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT,
                *Defendants.*<sup>*</sup>

-------------------------------------------------------------------

FOR APPELLANTS:     Rita Stein, pro se, Mineola, New York, Joanne Fanizza, Farmingdale, New York.

---

<sup>*</sup> The Clerk of Court is respectfully instructed to amend the official caption in this case to conform to the listing of the parties above.

FOR APPELLEES:          Gerald R. Podlesak, Deputy County Attorney, *for* John Ciampoli, County Attorney of Nassau County, Mineola, New York.

Appeal from the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED in part, VACATED in part, and REMANDED.

Plaintiff-appellant Rita Stein ("Rita"), proceeding pro se with co-counsel on behalf of herself and as executrix of the estate of her deceased husband Milton Stein ("Milton"), brought this action against the County of Nassau, the Nassau County Police Department,[1] and four emergency responders, Paul Barthelson, Diomedes Diaz, Anthony D'Alto, and James Whittaker. Rita claims that Barthelson, Diaz, D'Alto, and Whittaker (collectively, the "Individual Defendants") violated her and her husband's Fourth, Fifth, and Fourteenth Amendment rights and committed the state-law torts of assault and negligence when they refused to transport Milton – who was unresponsive at the time – to the hospital of Rita's choosing and then physically prevented Rita from interfering with their provision of emergency medical care to Milton.

The district court (Seybert, *J.*) granted summary judgment for the Individual Defendants on qualified immunity grounds, but permitted the claims against the County of

---

[1] Rita did not name the Nassau County Police Department as a defendant in her First Amended Complaint, and it was therefore dismissed as a party on December 12, 2007.

Nassau to proceed to trial. Stein v. County of Nassau, 642 F. Supp. 2d 135, 146 (E.D.N.Y. 2009). The district court then stayed further proceedings and certified two questions for interlocutory appeal pursuant to 28 U.S.C. § 1292(b): (1) whether the district court "correctly decide[d] that the County of Nassau was not entitled to summary judgment" and (2) whether the district court "correctly decide[d] that the Individual Defendants were entitled to summary judgment on the grounds of qualified immunity." We have exercised our discretion pursuant to 28 U.S.C. § 1292(b) to hear only the qualified immunity issue, which we address below. In so doing, we assume the parties' familiarity with the facts, procedural history, and issues on appeal.

## DISCUSSION

We review the district court's grant of summary judgment de novo. See Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006).

### 1. Federal Constitutional Claims

Qualified immunity often shields "government officials performing discretionary functions . . . from liability for civil damages." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We apply a two-step inquiry to determine whether qualified immunity bars suit against government officials in a particular case. Jones, 465 F.3d at 55. First, we "consider whether the facts alleged . . . demonstrate a violation of a constitutional right." Id. If a constitutional violation occurred, we "then consider whether the officials' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (internal quotation marks omitted).

3

As the district court found, Rita's constitutional claims rest on her authority to make health care decisions on Milton's behalf at the time of the incident giving rise to this case. Stein, 642 F. Supp. 2d at 140. Rita maintains that Milton granted her that authority in 1990 (fifteen years prior to the incident) when he executed a health care proxy naming Rita as his health care agent.[2] In the district court, the Individual Defendants argued that health care proxies have no force outside of the hospital setting, and that they were therefore free to disregard Rita's instructions. The district court concluded that the scope of health care proxies is not so limited. It found that "health care agents *must* be able to make the kinds of decisions that do not take place in hospitals, and thus do not occur in hospital settings." Id. at 142 (emphasis in original). Nevertheless, at step two of the qualified immunity inquiry, the district court found that the applicability of health care proxies to non-hospital settings had not been "clearly established" at the time of the incident, and therefore qualified immunity barred Rita's suit against the Individual Defendants. Id. at 145.

The parties' focus below on the scope of health care proxies masked what appears to be a fundamental flaw in Rita's constitutional claims: there is no evidence that Milton's treating physician took the statutorily required steps to empower Rita to act as Milton's agent. Under New York law, the creation of a health care proxy does not trigger an agent's authority to make health care decisions on behalf of her principal. Instead, that authority "commence[s] upon a determination, made pursuant to [New York Public Health Law

---

[2] Rita also argues that, under the common law of New York, she was authorized to make health care decisions on Milton's behalf based on her status as his wife. That claim was not made below, and we therefore decline to address it for the first time on appeal. See Greene v. United States, 13 F.3d 577, 586 (2d Cir. 1994).

4

§ 2983(1)], that the principal lacks capacity to make health care decisions." N.Y. Pub. Health Law § 2981(4). Under Section 2983(1), that determination must be "made by the attending physician" and "in writing."

There is no evidence that Milton's attending physician had made a written determination of incapacity in this case and the New York courts have not recognized an exception to the statute's requirements, or otherwise expansively interpreted Section 2983(1). It is therefore highly unlikely that Rita had the authority to dictate where Milton would be treated. Absent such authority, there could be no constitutional deprivation.

Were it necessary for us to conclusively determine the meaning of this statute and Rita's authority under it, we might feel compelled to certify the issue to the New York Court of Appeals. See NML Capital v. Republic of Argentina, 621 F.3d 230, 239 (2d Cir. 2010). Such a step is unnecessary in this case, however. Even if Rita actually had the authority to direct the Individual Defendants to transport Milton to a particular hospital, her authority to do so was not clearly established at the time of the incident.

The "clearly established" inquiry "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 822 (2009), quoting Wilson v. Layne, 526 U.S. 603, 614 (1999). In this case, the Individual Defendants had no reason to believe that they were obligated to comply with Rita's demands. The plain language of the statute appears to require a written determination of incapacity by a treating physician before a health care agent is empowered to make decisions for her principal, and Rita does not

5

allege that she told the Individual Defendants that such a determination had been made. Nor does she point to any authority supporting her contention that there is an implied exception to Section 2983(1) for unresponsive principals. As a result, the Individual Defendants had no reason to believe that Rita had the authority to act on Milton's behalf.

The only case interpreting the scope of New York's health care proxy law that Rita has presented to this Court, Mougiannis v. N. Shore-Long Island Jewish Health Sys., Inc., 806 N.Y.S.2d 623 (2d Dep't 2005), is immaterial. Mougiannis was decided on November 21, 2005, more than a month *after* the incident giving rise to this case. It therefore has no bearing on the state of the law at the time the Individual Defendants removed Milton from the Stein residence. Furthermore, even if Mougiannis had been decided prior to the incident, that case dealt only with the scope of a health care agent's authority under N.Y. Pub. Health Law § 2982, and did not address the written determination requirement of Section 2983(1). See Mougiannis, 806 N.Y.S.2d at 627-28. Therefore, even if there was a constitutional deprivation, the Individual Defendants would be entitled to summary judgment on qualified immunity grounds because Rita lacked a clearly established right to dictate the hospital to which the Individual Defendants took Milton.

## 2. State-Law Claims

The doctrine of qualified immunity applies to "*federal* causes of action but is not generally understood to protect officials from claims based on state law." Jenkins v. City of New York, 478 F.3d 76, 86 (2d Cir. 2007) (emphasis in original). Nevertheless, New York common law "grant[s] government officials qualified immunity on state-law claims except

where the officials' actions are undertaken in bad faith or without a reasonable basis." Jones, 465 F.3d at 63. However, in granting summary judgment for the Individual Defendants, the district court did not discuss the state-law standard for qualified immunity or explain why the Individual Defendants were entitled to qualified immunity on Rita's state-law claims.

Rita's state-law claims may not depend on her authority to make health care decisions on Milton's behalf. For example, she appears to contend that, even apart from her direction, established protocols instructed the Individual Defendants to take Milton to the nearest *appropriate* hospital, and that they negligently failed to meet that standard by choosing a hospital that was not suitable under the particular circumstances of this case. Moreover, the district court has not addressed whether state-law immunity protects the Individual Defendants from liability on Rita's state-law claims.[3] We therefore vacate the district court's order insofar as it granted summary judgment for the Individual Defendants on Rita's negligence and assault claims, and remand for the district court to consider the applicability of state-law qualified immunity to those claims in the first instance, if the court continues to exercise its discretion to retain jurisdiction over these state-law claims.

## CONCLUSION

We have considered all of Rita's remaining contentions on appeal and have found them to be without merit. Accordingly, for the foregoing reasons, we VACATE so much of the district court's judgment as granted summary judgment to the Individual Defendants on

---

[3] We of course express no opinion on those issues, which we reference only to explain why the resolution of Rita's federal-law claims is not necessarily dispositive of Rita's state-law claims.

7

Rita's state-law claims, AFFIRM the district court's grant of summary judgment on Rita's federal constitutional claims, and REMAND for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court